2                              rQ$UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 24-cv-25021-ALTMAN**

**MIGUEL ANGEL GALVAN ARIAS**,

      *Plaintiff,*

v.

**WARNER BROS. ENTERTAINMENT
INC.**, *et al.*,

      *Defendants.*

_____/

## ORDER ON MOTION TO DISMISS

Our *pro se* Plaintiff, Miguel Angel Galvan Arias, alleges that the Defendants—Warner Bros. Entertainment Inc. and Warner Bros. Pictures—"unlawfully copied substantial elements" of his original screenplay *Bolas de Papel* in their 2019 film *Joker* and its 2024 sequel, *Joker: Folie à Deux*. Complaint ("Compl.") [ECF No. 1] ¶ 2; *see also id.* ¶ 41. The Complaint advances four claims: Copyright Infringement (Count I), *see id.* ¶¶ 34–46; Unjust Enrichment (Count II), *see id.* ¶¶ 47–54; Conversion (Count III), *see id.* ¶¶ 55–63; and Permanent Injunction (Count IV), *see id.* ¶¶ 64–89. The Defendants have filed a Motion to Dismiss ("MTD") [ECF No. 31]—which, after careful review, we now **GRANT**.[1]

## THE FACTS

Our Plaintiff "is an individual residing in Spain." Compl ¶ 4. He is "the original author of *Bolas de Papel*" (the "Work") and owns "all rights, title, and interest" in the Work. *Id.* ¶ 5. *Bolas de Papel* "is a wholly original work containing unique characters, plotlines, themes, and scenes." *Id.* ¶ 21. On June

---

[1] The Defendants' MTD is fully briefed and ripe for adjudication. *See* Plaintiff's Response in Opposition to Defendants' Motion to Dismiss the Complaint ("Resp.") [ECF No. 32]; Defendants' Reply in Support of Defendants' MTD ("Reply") [ECF No. 37].

18, 2018, the Plaintiff "copyrighted his script . . . with *Registro de la Propiedad Intelectual* in Spain." *Id.* ¶ 22; *see also* Copyright Registration [ECF No. 1-2]. On July 1, 2018, the Plaintiff "submitted *Bolas de Papel* to Cannes Film Festival's Script Competition for consideration in a script competition . . . via FilmFreeway[.]" Compl. ¶ 23. On August 31, 2019, the Defendants "released the film *Joker*[.]" *Id.* ¶ 25. "Upon viewing the film, [the] Plaintiff recognized that substantial portions of *Joker* were unlawfully copied from *Bolas de Papel.*" *Id.* ¶ 26. On December 20, 2024, the Plaintiff filed this lawsuit, claiming that the "Defendants [gained] access to the Plaintiff's script when [the] Plaintiff presented [the] Work during the competition[.]" *Id.* ¶ 24. The Defendants have now moved to dismiss the Complaint. *See generally* MTD.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to [the] plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

2

Although "*pro se* pleadings are held to a more lenient standard than pleadings filed by lawyers," *Abram-Adams v. Citigroup, Inc.*, 491 F. App'x 972, 974 (11th Cir. 2012), that "leniency does not give a court license to serve as *de facto* counsel for a party or rewrite an otherwise deficient pleading in order to sustain an action," *Curtiss v. Comm'r of Soc. Sec.*, 856 F. App'x 276, 276 (11th Cir. 2021) (cleaned up). *Pro se* litigants cannot "simply point to some perceived or actual wrongdoing and then have the court fill in the facts to support their claim. . . . Judges cannot and must not fill in the blanks for *pro se* litigants; they may only cut some linguistic slack in what is actually pled." *Hanninen v. Fedoravitch*, 2009 WL 10668707, at *3 (S.D. Fla. Feb. 26, 2009) (Altonaga, J.) (cleaned up).

## ANALYSIS

### I.      Copyright Infringement (Count I)

To state a claim for copyright infringement under the Copyright Act, *see* 17 U.S.C. §§ 101, *et seq.*, a plaintiff "must allege facts showing '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Jackson v. JPay, Inc.*, 851 F. App'x 171, 173 (11th Cir. 2021) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991)). The first element ("ownership of a valid copyright") is a relatively simple task. "[A] plaintiff must prove that the work . . . is original and that the plaintiff complied with applicable statutory formalities." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) (cleaned up). The standard for the second element (originality) "is low, but it does exist." *Feist*, 499 U.S. at 362. It requires the author to have exhibited "some minimal degree of creativity." *Ibid.* (citing *In re Trade–Mark Cases*, 100 U.S. 82, 94 (1879)).

The Defendants concede that the Plaintiff plausibly alleges he "owns a valid copyright in the Work." MTD at 15. That leaves only the second element: whether the Plaintiff sufficiently alleges that the Defendants copied "constituent elements of the [W]ork that are original." *Feist*, 499 U.S. at 361. We conclude that he has not.

"The second element can be proven either with direct proof of copying or, if direct proof is unavailable, 'by demonstrating that the defendants had access to the copyrighted work and that the works are 'substantially similar.'" *Home Design Servs., Inc. v. Turner Heritage Homes Inc.*, 825 F.3d 1314, 1321 (11th Cir. 2016) (quoting *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008)). Here, we agree with the Defendants that "there is no direct proof of copying." MTD at 15; *see generally* Compl. (containing no allegations of direct proof of copying); *see also Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1249 (11th Cir. 1999) ("Since it is virtually impossible to prove copying directly, this element is usually established circumstantially[.]"). And the Plaintiff notably never disputes this assertion in his Response. *See generally* Resp. "He's thus forfeited (at least for now) any argument he might have advanced as to [that] element." *Amaya v. Vilsack*, 2024 WL 3509583, at \*5 (S.D. Fla. July 23, 2024) (Altman, J.); *see also United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived.").

To succeed on the second element, then, the Plaintiff must allege facts showing "that the defendants had access to the copyrighted work and that the works are 'substantially similar.'" *Home*, 825 F.3d at 1321 (quoting *Oravec*, 527 F.3d at 1223). "Substantial similarity exists 'where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" *Off Lease Only, Inc. v. Lakeland Motors, LLC*, 825 F. App'x 722, 726 (11th Cir. 2020) (quoting *Interest Constr., Inc. v. Canterbury Est. Homes, Inc.*, 554 F.3d 914, 920 (11th Cir. 2008) (cleaned up)). The Complaint fails this simple test.

*First*, the Plaintiff hasn't shown that "the defendants had access to [his] copyrighted work[.]" *Home*, 825 F.3d at 1321. The Plaintiff alleges that he "submitted *Bolas de Papel* to Cannes Film Festival's Script Competition for consideration in a script competition on July 1, 2018, via FilmFreeway[.]" Compl. ¶ 23. As he sees it, the "Defendants had access to the Plaintiff's script when [he] presented [the] [ ] Work during . . . the Cannes Festival script competition[.]" *Id.* ¶ 24. As the Defendants correctly observe, however, the Plaintiff fails to allege *any* facts "establishing a 'nexus' between dissemination of the Work and [the] Defendants specifically." MTD at 15. "[T]he Complaint," they rightly say, "does not allege that [the] Defendants or anyone involved in the writing or production of *Joker* were provided, shown, or read a copy of the Work prior to the film's release." *Ibid.* "The Complaint," they continue, "does not allege when, how, or by what means [the] Plaintiff 'presented' the Work or to whom the Work was present[ed]; nor does the complaint allege that the Work was otherwise published, publicly disseminated, or widely circulated in any way or by any means other than via a sole submission 'via Film Freeway.'" *Ibid.* We agree.

"To support a finding of access there must be a reasonable possibility of access—not a bare possibility[.]" *Herzog*, 193 F.3d at 1256. "Access requires proof of 'a reasonable opportunity to view' the work in question." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007) (quoting *Herzog*, 193 F.3d at 1249); *see also Herzog*, 193 F.3d at 1252 ("[A]n inference of access based on a third party's possession of the plaintiff's work requires more than a mere allegation that someone known to the defendant possessed the work in question." (cleaned up)).

Our Plaintiff never connects the dots between his submission of *Bolas de Papel* to FilmFreeway and the Defendants' "reasonable opportunity to view" the Work. *Herzog*, 193 F.3d at 1249. He never says *how* the Defendants gained access to the Work, *who* at the Defendants' offices gained that access, or any facts suggesting that FilmFreeway ever shared the Work with the Defendants. *See generally* Compl. And the Eleventh Circuit has been clear that "[a]ccess may not be inferred through mere

speculation or conjecture," *Herzog*, 193 F.3d at 1250 (cleaned up)—which is all our Plaintiff offers here.

Still, a plaintiff who cannot show access "may still prevail by demonstrating that the works are strikingly similar." *Id.* at 1248 (cleaned up). But our Plaintiff hasn't shown that either. "Striking similarity exists where the proof of similarity in appearance is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Corwin*, 475 F.3d at 1253 (cleaned up). Our Plaintiff says that both works feature "a talk show host character" who "humiliates a guest," a villain character with "uncontrollable laughter . . . caused by an undisclosed/mysterious infirmity" who is a "catalyst[ ] for societal change," "a city in panic and chaos," "a detective character who is deeply introspective," "the theme of escalating violence," characters with "troubled histories such as mental illness and addiction," "a focus on the personal impact of violence on families," "themes of moral ambiguity," and a "final scene where one of the main characters [is] shot in the head[.]" Compl. ¶ 27. Unfortunately, none of these "similarities" are subject to copyright protection.

"A court can dispose of a copyright case at the motion-to-dismiss stage if all similarities alleged concern unoriginal aspects of the work, since 'separating protectable expression from non-protectable expression is, in reality, a question of law or, at the very least, a mixed question of law and fact.'" "Noncopyrightable material includes 'general themes,' 'broad ideas,' and '*scènes à faire*'—stock scenes that naturally flow from a common theme." *Clark v. Alexander*, 2025 WL 2925375, at *2 (11th Cir. Oct. 15, 2025) (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459–60 (11th Cir. 1994)); *see also Bennett v. Walt Disney Co.*, 2024 WL 4040443, at *2 (11th Cir. Sep. 4, 2024) ("Thus, copyright does not cover *scenes a faire*, which are 'incidents, characters, or settings that are indispensable or standard in the treatment of a given topic.'" (quoting *Herzog*, 193 F.3d at 1248 (cleaned up)).

Our Plaintiff has identified only the most "general themes" and "broad ideas"—a city in chaos, characters with mental illness or troubled pasts, themes of violence, murder, social change, and moral ambiguity, a man who gets shot in the head. *See* Compl. ¶ 27. These are merely *scènes à faire*—common in hundreds, if not thousands, of movies and stories. *Accord Beal*, 20 F.3d at 461–63 (finding that, although both works feature protagonists who "are crown princes and sole heirs to the thrones of foreign nations who have come to America," a love triangle, a palace, and "visits to fast-food restaurants and nightclub sequences[,] . . . such broad similarities are merely *scènes à faire* without a showing of more specific resemblances"); *Bennett*, 2024 WL 4040443, at *2 (finding two Marvel characters did not infringe on the plaintiff's character because "winged superheroes are ubiquitous" and "military outfits" and guns "are *scènes à faire* in the action and comic book genres"); *Evans v. Wallace Berrie & Co., Inc.*, 681 F. Supp. 813, 817 (S.D. Fla. 1988) (Spellman, J.) (finding that "using a sand dollar as currency, foods made of seaweed, seahorses for transportation and plates made of oyster or mother of pearl are not protected similarities of expression, but are more accurately characterizations that naturally follow from the common theme of an underwater civilization"). The Eleventh Circuit has been clear that "broad similarities between the works [that] involve ideas and other general themes [ ] are not susceptible to copyright protection." *Beal*, 20 F.3d at 460. Where, as here, "the similarity between two works concerns only non-copyrightable elements, then there can be no copyright infringement as a matter of law." *Home*, 825 F.3d at 1323; *see also Ross v. Apple, Inc.*, 2017 WL 4317652, at *4 (S.D. Fla. July 19, 2017) (Williams, J.), *aff'd*, 741 F. App'x 733 (11th Cir. 2018) ("These comparisons between Apple's products and the noncopyrightable functional aspects of the ERD product do not support a finding of striking similarity.").

This is all, of course, ignoring the obvious fact that the *Joker* is based, not on *Bolas de Papel*, but on the Spring 1940 Batman #1 comic. *See* Bill Finger, *et al.*, *Batman #1*, DC Comics (Mar. 6, 1940); *see also* Sean T. Collins, *The Complete History of the Joker*, Rolling Stone (Dec. 16, 2019),

7

https://www.rollingstone.com/tv-movies/tv-movie-features/complete-history-of-the-joker-889033/.

We therefore **GRANT** the Motion to Dismiss Count I.

## II.     The Plaintiff's Remaining Counts: Unjust Enrichment (Count II), Conversion (Count III), and Permanent Injunction (Count IV)

Counts II and III advance claims of unjust enrichment and conversion, respectively. The Defendants say that both "claims are preempted" under "[s]ection 301(a) of the Copyright Act" because they're "state law claims based on rights that are 'equivalent to any of the exclusive right[s] within the general scope of copyright.'" MTD at 22 (quoting § 301(a)). The Plaintiff fails to respond to (or even acknowledge) this argument. *See generally* Resp. In fact, he doesn't even *mention* Counts II and III at all in his Response. "By failing to respond to these arguments, the Plaintiff forfeited any response [he] might have had to them." *Taylor v. Noem*, 2025 WL 3274410, at *3 (S.D. Fla. Nov. 24, 2025) (Altman, J.); *see also Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("A party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed. Also, when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (cleaned up)); *Campbell*, 26 F.4th at 873 ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *Hamilton*, 680 F.3d at 1319 ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d at 1163 ("Arguments not properly presented . . . are deemed waived.").

In any event, the Defendants are right on the merits. Section 301(a) of the Copyright Act makes plain that the following state-law claims are preempted:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this

title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

"The Eleventh Circuit has set forth a two-part test for district courts to use in assessing whether a state-law claim is preempted by the Copyright Act[.]" *MedSoftSys, Inc. v. CoolMoon Corp.*, 553 F. Supp. 3d 1275, 1279 (S.D. Fla. 2021) (Altman, J.). *First*, "we must decide whether the rights at issue fall within the 'subject matter of copyright' set forth in sections 102 and 103." *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1293 (11th Cir. 2004) (cleaned up). *Second*, "we must determine whether the rights at issue are 'equivalent to' the exclusive rights of section 106." *Id.* at 1293–94. For the second inquiry, our Circuit employs the "extra element" test. *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001). "Under this test, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright and there is no preemption." *Ibid.* (cleaned up). "Along these lines, a state law claim is not preempted if the extra element changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim." *Ibid.* "For example, awareness and intent are not considered to be qualitatively different elements substantial enough to serve as an 'extra element.'" *Ibid.*

In Count II, the Plaintiff alleges that he "conferred a benefit in his original ideas and concepts to [the] Defendants," Compl. ¶ 49, and that the Defendants "received and will continue to receive unlawful gains from the benefit conferred by [the] Plaintiff, including without limitation their taking of [the] Plaintiff's confidential and proprietary information as articulated in [the] Plaintiff's Work," *id.* ¶ 50. For two reasons, this claim is preempted by the Copyright Act.

*First*, the "rights at issue" in this count are the Plaintiff's "original ideas and concepts," *id.* ¶ 48, which fall squarely within the scope of "original works of authorship" protected under § 102(a). The Plaintiff's claim therefore easily satisfies the first preemption inquiry—which asks whether "the rights at issue fall within 'the subject matter of copyright.'" *Dunlap*, 381 F.3d at 1293. *Second*, as the

9

Defendants rightly note, "there is no 'extra element,' since the claim is centered on copying of [the] Plaintiff's Work." MTD at 24. The Plaintiff alleges that the Defendants "received and will continue to receive unlawful gains from the benefit conferred by [the] Plaintiff, including without limitation their taking of [the] Plaintiff's confidential and proprietary information as articulated in [the] Plaintiff's Work." Compl. ¶ 50; *see also State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) ("If an entity accepts and retains benefits that it is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment."). In other words, he's alleging that the Defendants "prepare[d] derivative works based upon" the Work, § 106(2), and then "distribute[d]" and "display[ed]" that derivate work, §§ 106(3), (5)—and that the Plaintiff, as "[t]he copyright owner, is entitled to recover . . . any profits of the infringer that are attributable to the infringement," § 504. Far from being "*qualitatively* different from a copyright infringement claim," *Dunlap*, 381 F.3d at 1293–94, the Plaintiff relies on the core of a copyright-infringement claim, *see* § 106 (granting the "owner of copyright . . . the exclusive rights to do and to authorize any of the following: to reproduce . . . [,] to prepare derivative works . . . [,] to distribute [for sale] . . . [,] to perform . . . [,] [and] to display" the copyrighted work); § 504 ("The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement that are not take into account in the computing the actual damages."); *see also CollegeSource, Inc. v. AcademyOne, Inc.*, 597 F. App'x 116, 128 (3d Cir. 2015) ("Federal courts have routinely held that claims of unjust enrichment are pre-empted under § 106 where the claim rests on an allegation that the defendant has secured a benefit due to the plaintiff under the Copyright Act."); *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (finding the plaintiff's unjust-enrichment claim pre-empted by the Copyright Act and explaining that "Plaintiffs seek to protect their alleged interests in 'The Thin Red Line' under the theory that Phoenix was unjustly enriched by turning Jones' novel and Malick's screenplay into a motion picture without compensating Briarpatch or obtaining

10

Briarpatch's permission. From this, it is clear that the specific right they are trying to enforce is the right of adaptation—*i.e.,* the right to prepare or authorize preparation of a derivative work based on a novel or screenplay."); *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1148 (10th Cir. 2009) (finding that "the state common-law rights asserted by [the plaintiff's unjust-enrichment claim] are equivalent to the exclusive rights set forth in § 106 of the Copyright Act").

We therefore **GRANT** the Defendants' Motion to Dismiss Count II.

Count III is even more straightforward. The Eleventh Circuit has held that a "conversion claim is preempted by the Copyright Act, which preempts certain state-law claims." *Karlson v. Red Door Homes, LLC*, 611 F. App'x 566, 572 (11th Cir. 2015); *see also OpenRisk, LLC, v. Microstrategy Servs. Corp.*, 876 F.3d 518, 524 (4th Cir. 2017) ("And it is clear that when a conversion claim—like OpenRisk's— rests on an allegation of wrongful copying and distribution of intellectual property, it is 'equivalent' to a copyright infringement claim and thus preempted under the Copyright Act."); *Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*, 515 F. Supp. 3d 1292, 1302 (S.D. Fla. 2021) (Altonaga, J.), *aff'd*, 2023 WL 3454614 (11th Cir. May 15, 2023) ("[The] Plaintiffs' conversion claim—based on [the Defendant's] display, distribution, or other use of the intellectual property—does not contain an 'extra element' to avoid preemption and as a result, must be dismissed."). We thus **GRANT** the Defendants' Motion to Dismiss Count III.

Finally, Count IV asks for a "permanent injunction." *See* Compl. ¶¶ 64–89. But a permanent injunction is a remedy, not a cause of action. *See Ala. v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action . . . . 'There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6)[.]'") (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004)); *Klay*, 376 F.3d at 1098 ("[An] injunction is a

remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed[.]"). Plus, even if the Plaintiff had properly stated a permanent-injunction claim as a form of relief, he hasn't (as we've discussed) pled a viable cause of action, so we **DISMISS** Count IV.

***

The Eleventh Circuit has repeatedly held that "'a *pro se* plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice'—at least, that is, where 'a more carefully drafted complaint might state a claim.'" *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019) (quoting *Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018)). "But a district court need not grant leave to amend when either (1) the district court has a clear indication that the plaintiff does not want to amend his complaint, or (2) a more carefully drafted complaint could not state a claim." *Woldeab*, 885 F.3d at 1291. This latter exception—sometimes known as the "futility" exception—applies "if an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020). We'll therefore allow the Plaintiff to file an amended complaint as to Count I. But we'll dismiss Counts II–IV *with prejudice* because Counts II and III are squarely preempted by the Copyright Act and Count IV isn't a claim at all.

**CONCLUSION**

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. The Defendants' Motion to Dismiss [ECF No. 31] is **GRANTED**.

2. Count I is **DISMISSED without prejudice**. If the Plaintiff wants to file an amended complaint as to Count I, he must do so by **May 26, 2026**.

12

3. Counts II and III are **DISMISSED with prejudice** because they're preempted by the Copyright Act. Count IV is **DISMISSED with prejudice** because it isn't a cause of action at all.

**DONE AND ORDERED** in the Southern District of Florida on May 11, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record
        Miguel Angel Galvan Arias, *pro se*