**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-25021-ALTMAN**

**MIGUEL ANGEL GALVAN ARIAS**,

*Plaintiff*,

*v*.

**WARNER BROS. ENTERTAINMENT INC.**, *et al.*,

*Defendants*.
_________________________________/

# ORDER ON MOTION TO DISMISS

This case requires us to decide whether the 2019 blockbuster film, *Joker*, ripped off our Plaintiff's unpublished work, *Bolas de Papel*. The Plaintiff alleges that Warner Bros. illegally copied his work in violation of the Copyright Act. The Defendants now move to dismiss the Plaintiff's amended complaint. After careful consideration, we **GRANT** the Motion to Dismiss.

## BACKGROUND

### I. Factual Allegations[1]

Our Plaintiff "independently authored an original screenplay titled *Bolas de Papel*" (the "Work") and owns a "legally secured and registered [ ] copyright for the script[.]" Amended Complaint ("AC") [ECF No. 113] ¶¶ 4, 6. On June 18, 2018, the Plaintiff "copyrighted his script . . . with *Registro de la Propiedad Intelectual* in Spain." *Id.* ¶ 6; *see also* Copyright Registration [ECF No. 113] at 9. "On July 1, 2018, [the] Plaintiff submitted *Bolas de Papel* to Cannes Film Festival's Script Competition for

[1] We accept the allegations of the Amended Complaint as true for purposes of this Order. *See Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but 'legal conclusions without adequate factual support are entitled to no assumption of truth.'" (quoting *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (cleaned up))).

consideration in a script competition via FilmFreeway." AC ¶ 7. On August 31, 2019, the Defendants "released the film *Joker*" and "a theatrical sequel entitled: *Joker: Folie a Deux*[.]" *Id.* ¶ 10. The Plaintiff claims that both these works "directly exploit" and "replicate[ ] the characters, plotlines, and structural elements misappropriated from [the] Plaintiff's [W]ork, constituting a continuous [ ] infringement." *Ibid.*

## II. Procedural History

On December 20, 2024, the Plaintiff filed this lawsuit, claiming that the "Defendants [gained] access to the Plaintiff's script when [the] Plaintiff presented [the] Work during the [Cannes Film Festival] competition[.]" Complaint [ECF No. 1] ¶ 24. On May 11, 2026, we dismissed the Plaintiff's original Complaint because the Plaintiff had failed to show that the Defendants ever had access to his Work. *See Arias v. Warner Bros. Ent. Inc.*, 2026 WL 1279150, at *3 (S.D. Fla. May 11, 2026) (Altman, J.) ("Our Plaintiff never connects the dots between his submission of *Bolas de Papel* to FilmFreeway and the Defendants' reasonable opportunity to view the Work. He never says *how* the Defendants gained access to the Work, *who* at the Defendants' offices gained that access, or any facts suggesting that FilmFreeway ever shared the Work with the Defendants. And the Eleventh Circuit has been clear that access may not be inferred through mere speculation or conjecture—which is all our Plaintiff offers here." (quotations omitted) (cleaned up)).[2] Nor, we concluded, had our Plaintiff shown that *Joker* and his Work were strikingly similar because he'd "identified only the most 'general themes' and 'broad ideas,'" which are not subject to copyright protection and could not sustain a claim for copyright infringement. *Id.* at *4; *see also id.* at *3 ("Our Plaintiff says that both works feature a talk show host character who humiliates a guest, a villain character with uncontrollable laughter caused by an undisclosed/mysterious infirmity who is a catalyst[ ] for societal change, a city in panic and chaos, a

[2] Our Order can also be found at ECF No. 109.

detective character who is deeply introspective, the theme of escalating violence, characters with troubled histories such as mental illness and addiction, a focus on the personal impact of violence on families, themes of moral ambiguity, and a final scene where one of the main characters is shot in the head. Unfortunately, none of these 'similarities' are subject to copyright protection." (cleaned up)); *id.* at *4 ("Where, as here, 'the similarity between two works concerns only non-copyrightable elements, then there can be no copyright infringement as a matter of law.'" (quoting *Home Design Servs., Inc. v. Turner Heritage Homes Inc.*, 825 F.3d 1314, 1323 (11th Cir. 2016))). Because our Plaintiff is *pro se*, we gave him a chance to amend his complaint.

On May 20, 2026, the Plaintiff filed his Amended Complaint, asserting a single claim of copyright infringement. The Defendants promptly moved to dismiss the Amended Complaint, *see* Motion to Dismiss (the "MTD") [ECF No. 115], and their motion is now fully briefed, *see* Response [ECF No. 117]; Reply [ECF No. 118]. This Order follows.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to [the] plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

Although "*pro se* pleadings are held to a more lenient standard than pleadings filed by lawyers," *Abram-Adams v. Citigroup, Inc.*, 491 F. App'x 972, 974 (11th Cir. 2012), that "leniency does not give a court license to serve as *de facto* counsel for a party or rewrite an otherwise deficient pleading in order to sustain an action," *Curtiss v. Comm'r of Soc. Sec.*, 856 F. App'x 276, 276 (11th Cir. 2021) (cleaned up). *Pro se* litigants cannot "simply point to some perceived or actual wrongdoing and then have the court fill in the facts to support their claim. . . . Judges cannot and must not fill in the blanks for *pro se* litigants; they may only cut some linguistic slack in what is actually pled." *Hanninen v. Fedoravitch*, 2009 WL 10668707, at *3 (S.D. Fla. Feb. 26, 2009) (Altonaga, J.) (cleaned up).

## ANALYSIS

To state a viable copyright-infringement claim under the Copyright Act, *see* 17 U.S.C. §§ 101, *et seq.*, a plaintiff "must allege facts showing '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Jackson v. JPay, Inc.*, 851 F. App'x 171, 173 (11th Cir. 2021) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991)). The first element ("ownership of a valid copyright") is a relatively simple task. "[A] plaintiff must prove that the work . . . is original and that the plaintiff complied with applicable statutory formalities." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) (cleaned up). The standard for the second element (originality) "is low, but it does exist." *Feist*, 499 U.S. at 362. It requires the author to have exhibited "some minimal degree of creativity." *Ibid.* (citing *In re Trade–Mark Cases*, 100 U.S. 82, 94 (1879)).

The Defendants concede that the Plaintiff plausibly alleges he "owns a valid copyright in the Work." MTD at 7. That leaves only the second element: whether the Plaintiff sufficiently alleges that

the Defendants copied "constituent elements of the [W]ork that are original." *Feist*, 499 U.S. at 361. We again conclude that he has not. *See generally Arias*, 2026 WL 127950, at *2–4 (granting the Defendants' first motion to dismiss because the Plaintiff failed to plausibly allege this element).

"The second element can be proven either with direct proof of copying or, if direct proof is unavailable, 'by demonstrating that the defendants had access to the copyrighted work and that the works are 'substantially similar.''" *Home Design Servs.*, 825 F.3d at 1321 (quoting *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008)). Here, we agree with the Defendants that "there is no direct proof of copying." MTD at 7; *see generally* AC (containing no allegations of direct proof of copying); *see also Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1249 (11th Cir. 1999) ("Since it is virtually impossible to prove copying directly, this element is usually established circumstantially[.]"). Notably, the Plaintiff never suggests that he has any such proof of direct copying. *See generally* Response. "He's thus forfeited (at least for now) any argument he might have advanced as to [that] element." *Amaya v. Vilsack*, 2024 WL 3509583, at *5 (S.D. Fla. July 23, 2024) (Altman, J.); *see also United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed [forfeited].").

To succeed on the second element, then, the Plaintiff must allege facts showing "that the defendants had access to the copyrighted work and that the works are 'substantially similar.'" *Home Design Servs.*, 825 F.3d at 1321 (quoting *Oravec*, 527 F.3d at 1223). "Substantial similarity exists 'where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" *Off Lease Only, Inc. v. Lakeland Motors, LLC*, 825 F. App'x 722, 726 (11th Cir. 2020)

(quoting *Inv. Constr., Inc. v. Canterbury Est. Homes, Inc.*, 554 F.3d 914, 920 (11th Cir. 2008) (cleaned up)). The Amended Complaint still fails this test because the Plaintiff cannot show that the works are substantially similar.[3]

As we've said, a plaintiff who establishes that the defendant had access to his work must still show a "substantial similarity" between the copyrightable aspects of the alleged infringing work and the copyrighted work. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232 (11th Cir. 2010); *see also Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000) ("No matter how the copying is proved, the plaintiff also must establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work with regard to its protected elements."). "But 'before comparing two works to determine if they display the required substantial similarity, a court must eliminate from comparison the unprotectable elements of the copyrighted work.'" *Ronin Factory, LLC v. Imp. Glob., LLC*, 2025 WL 887371, at *11 (S.D. Fla. Mar. 20, 2025) (Scola, J.) (quoting *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1303 (11th Cir. 2020) (cleaned up)). "This process is known as 'filtration' and 'is necessary because even substantial similarity between a copyrighted work's unprotectable elements and a purportedly infringing work isn't actionable, regardless of how many unprotectable elements are copied or how important they may be.'" *Ibid.* (quoting *Compulife Software*, 959 F.3d at 1303).

"Noncopyrightable material includes 'general themes,' 'broad ideas,' and '*scènes à faire*'—stock scenes that naturally flow from a common theme." *Clark v. Alexander*, 2025 WL 2925375, at *2 (11th Cir. Oct. 15, 2025) (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459–60 (11th Cir. 1994)); *see also Bennett v. Walt Disney Co.*, 2024 WL 4040443, at *2 (11th Cir. Sep. 4, 2024) ("Thus, copyright does not cover *scènes à faire*, which are 'incidents, characters, or settings that are indispensable or standard in the treatment of a given topic.'" (quoting *Herzog*, 193 F.3d at 1248 (cleaned up))); *Compulife Software*,

---

[3] We'll assume without deciding that he can establish the Defendants' access to the Work.

959 F.3d at 1304 (discussing filtration and holding that "material may be unprotected if it constitutes *scènes à faire*—that is incidents, characters, or settings that are indispensable or standard in the treatment of a given topic"). "A court can [therefore] dispose of a copyright case at the motion-to-dismiss stage if all similarities alleged concern unoriginal aspects of the work, since 'separating protectable expression from non-protectable expression is, in reality, a question of law or, at the very least, a mixed question of law and fact.'" *Bennett*, 2024 WL 4040443, at *2 (quoting *Intervest Consrt., Inc*, 554 F.3d at 920 (cleaned up)).

The Plaintiff says that both works feature "a distinctive talk show host character who possesses a commanding personality, is deeply well-liked by the public, and exercises a pivotal role in manipulating public opinion on critical societal issues," and that both include a "highly specific climactic scene where said talk show host intentionally humiliates a guest live on television[.]" AC ¶ 16. What's more, our Plaintiff insists that both works include a "villain/anti-hero" with "uncontrollable laughter and physical shakiness . . . driven by an undisclosed, mysterious physical infirmity," "a major city descending into panic, riots, and absolute chaos," "media sensationalism as an amplifier," a "detective character who is profoundly introspective," "tension and municipal chaos," a final scene "where a main character is shot directly in the head," characters with "troubled pasts," "the destructive impact of violence on families," and "deep themes of moral ambiguity, forcing characters to navigate corrupt municipal systems while entirely losing their moral compass[.]" *Ibid.* But these are precisely the kinds of "similarities" we *already* said aren't subject to copyright protection. *See Arias*, 2026 WL 1279150, at *3 (holding that themes of "a talk show host character who humiliates a guest, a villain character with uncontrollable laughter caused by an undisclosed/mysterious infirmity who is a catalyst for societal change, a city in panic and chaos, a detective character who is deeply introspective, the theme of escalating violence, characters with troubled histories such as mental illness and addiction, a

focus on the personal impact of violence on families, themes of moral ambiguity, and a final scene where one of the main characters is shot in the head" were not "subject to copyright protection").

Once again, our "Plaintiff has identified only the most 'general themes' and 'broad ideas'—a city in chaos, characters with mental illness or troubled pasts, themes of violence, murder, social change, moral ambiguity, and a man who gets shot in the head." *Id.* at *4; *see also* AC ¶ 16. The Amended Complaint simply re-alleges the same *scènes à faire*, "common in hundreds, if not thousands, of movies and stories[.]" *Arias*, 2026 WL 1279150, at *4; *accord Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1251 (11th Cir. 2007) (noting that there's "no protection for common elements in police fiction, such as drunks, prostitutes, vermin and derelict cars and foot chases and the morale problems of policemen, not to mention the familiar figure of the Irish cop"); *Beal*, 20 F.3d at 461–63 (finding that, although both works feature protagonists who "are crown princes and sole heirs to the thrones of foreign nations who have come to America," a love triangle, a palace, and "visits to fast-food restaurants and nightclub sequences[,] . . . such broad similarities are merely *scènes à faire* without a showing of more specific resemblances"); *Bennett*, 2024 WL 4040443, at *2 (finding that two Marvel characters did not infringe on the plaintiff's character because "winged superheroes are ubiquitous" and "military outfits" and guns "are *scènes à faire* in the action and comic book genres"); *Evans v. Wallace Berrie & Co., Inc.*, 681 F. Supp. 813, 817 (S.D. Fla. 1988) (Spellman, J.) (finding that "using a sand dollar as currency, foods made of seaweed, seahorses for transportation and plates made of oyster or mother of pearl are not protected similarities of expression, but are more accurately characterizations that naturally follow from the common theme of an underwater civilization"). The Eleventh Circuit has been clear that "broad similarities between the works [that] involve ideas and other general themes [ ] are not susceptible to copyright protection." *Beal*, 20 F.3d at 460. Where, as here, "the similarity between two works concerns only non-copyrightable elements, then there can be no copyright infringement as a matter of law." *Home Design Servs.*, 825 F.3d at 1323; *see also Ross v. Apple, Inc.*, 2017 WL 4317652, at *4

(S.D. Fla. July 19, 2017) (Williams, J.) ("These comparisons between Apple's products and the noncopyrightable functional aspects of the ERD product do not support a finding of striking similarity."), *aff'd*, 741 F. App'x 733 (11th Cir. 2018).

We therefore **GRANT** the Motion to Dismiss.

**LEAVE TO AMEND**

We've already given our Plaintiff one chance to amend his complaint. *See Arias*, 2026 WL 1279150, at *6 (allowing "the Plaintiff to file an amended complaint"). We won't give him another. *See Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) ("The district judge was not required to *sua sponte* grant [the *pro se* plaintiff] an opportunity to amend his complaint before dismissing it with prejudice. As the district judge correctly noted, the subject complaint was [the plaintiff's] second attempt to make a legally cognizable claim[.] . . . Because [the plaintiff] already had been given an opportunity to correct his pleadings, the judge was not required to give him another chance."); *Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 903 (11th Cir. 2020) (affirming the district court's dismissal without leave to amend where the *pro se* plaintiff "was granted previously two opportunities to amend the complaint and cure any pleading deficiencies, yet he failed to do so"); *Roman v. Tyco Simplex Grinnell*, 732 F. App'x 813, 815 (11th Cir. 2018) ("A district court need not allow a [*pro se*] plaintiff to amend his complaint if the plaintiff has repeatedly failed to cure previously identified deficiencies."); *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) ("The district court gave [the plaintiff] two opportunities to amend her complaint, and she failed to correct the deficiencies in it. Such leniency [is] sufficient . . . [for] a typical *pro se* litigant[.]"). We think this is the right result for a couple reasons.

For one thing, the Amended Complaint fails to remedy *any* of the deficiencies we'd previously identified. For another, the Plaintiff cannot escape "the obvious fact that the *Joker* is based, not on *Bolas de Papel*, but on the Spring 1940 Batman #1 comic." *Arias*, 2026 WL 1279150, at *4 (first citing

Bill Finger, *et al.*, *Batman #1*, DC Comics (Mar. 6, 1940); and then citing Sean T. Collins, *The Complete History of the Joker*, Rolling Stone (Dec. 16, 2019), https://www.rollingstone.com/tv-movies/tv-movie-features/complete-history-of-the-joker-889033/). The Plaintiff has wasted judicial resources on his frivolous claims for over twenty months now, and "the Eleventh Circuit has consistently affirmed the with-prejudice dismissal of frivolous complaints." *Oro v. US Bank Tr. Nat'l Ass'n*, 2024 WL 6965502 (S.D. Fla. June 10, 2024) (Altman, J.) (cleaned up); *Nails v. Franklin*, 279 F. App'x 899, 901 (11th Cir. 2008) ("We agree that Plaintiff's suit is frivolous and should be dismissed with prejudice."); *Gabriel v. SLS Lux Brickell Hotel*, 2026 WL 1970875, at *6 (S.D. Fla. July 8, 2026) (Altman, J.) (dismissing the complaint with prejudice because, "[d]espite [ ] clear admonitions, Gabriel's complaint continues to suffer from fatal flaws"). The Amended Complaint is dismissed **with prejudice**.

## CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. The Defendants' Motion to Dismiss [ECF No. 115] is **GRANTED**.
2. This case is **DISMISSED with prejudice**.
3. This Clerk is directed to **CLOSE** this case. All deadlines and any pending motions are **TERMINATED**.

**DONE AND ORDERED** in the Southern District of Florida on September 1, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record
Miguel Angel Galvan Arias, *pro se*